GEORGE W. GROVES, Appellant, *v.* GUY S. WARREN, Respondent.

Third Department, May 2, 1917.

**Sale — intent that payment and delivery be concurrent acts — agreement to resell merchandise — conversion.**

Where the purchaser of a stock of shoes, rubbers, etc., agreed to place them on sale in the store of the vendor, to pay the clerk hire and advertising expense thereof, and that the vendor should be at liberty to participate in such sale and should have the proceeds thereof from day to day until the purchase price was paid, and the vendor after receiving the greater part of the purchase price due him removed the remainder of the stock, valued at nearly four times the balance due, and excluded the purchaser from the possession thereof, the latter is not entitled to maintain an action for conversion, because title had not vested in him, the intent being that delivery and payment should be concurrent. The rights of the parties rested in contract.

KELLOGG, P. J., and WOODWARD, J., dissented, with opinion.

APPEAL by the plaintiff, George W. Groves, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Tioga on the 6th day of October, 1916, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

Third Department, May, 1917.          [Vol. 178.

On December 10, 1915, the plaintiff as party of the first part made a written contract with the defendant as party of the second part to said contract. The defendant was a retail shoe merchant in Waverly, N. Y. The contract contained the following provisions: " Party of first part agrees to and by this contract does purchase of party of second part, a certain stock of shoes and rubbers, etc., (not including fixtures) at inventory or cost from manufacturers or jobbers to second party, less thirty per cent of said inventory or cost price, except a certain specified few pairs of shoes and rubbers, a list and inventory of which is attached hereto, and party of second part shall receive inventory or cost for these few pairs, being stock purchased by second party during last part of 30 days. Party of first part agrees to put on sale of above mentioned stock in the store of second party at 304 Broad St., and party of second part agrees to take his pay in the following manner: At the close of each day's sale, parties of first and second part shall count up and check the cash taken in during the day and party of second part shall keep such cash until he shall have received the amount due him on this contract and in case sales of entire stock should not equal purchase price of stock, party of first part agrees to make up said difference at close of sale. Party of first part agrees to pay the clerk hire and advertising expense of conducting the sale, such expenses to start from the time the inventory is completed. Party of second part by this agrees to give his services without charge, until his claims are satisfied and he shall have received all his money due him under this contract and also to give possession of store without charge until the end of sale. Inventory of few pairs is mentioned in contract by mutual consent estimated at ($400) Four Hundred and list not necessary." The remainder of the contract does not at present appear to be material.

The parties immediately took an inventory and it is conceded that the inventoried value of the property was about $5,900. The purchase price to the defendant, therefore, under the arrangement above indicated was $4,250.

Immediately after the inventory was taken the plaintiff advertised a sale of the property at retail to the public as contemplated by the contract, and proceeded with such

sale. The first three days the sales amounted to $2,500 which amount was turned over to the defendant. Then the plaintiff discharged some clerks and the sales dwindled until February 28, 1916, at which time the total sales had increased a little more than $1,000 in excess of the first three days. The last week they do not appear to have averaged much more than $10 a day. In the correspondence which preceded the contract plaintiff had expressed the opinion that defendant would receive his purchase price within a week. On February 28, 1916, the defendant removed the remaining stock of goods from the store and excluded plaintiff from the possession thereof. At that time the defendant had received on account of the purchase price due him from the plaintiff about $3,600, leaving unpaid about $650. The inventoried value of the property taken by him February twenty-eighth was over $2,400.

This action is brought for a conversion. At the close of the plaintiff's evidence the court dismissed the complaint for the reason that the plaintiff had neither title to the property nor possession thereof.

*Lynch & Clifford* [*F. W. Clifford* of counsel], for the appellant.

*Frederick E. Hawkes,* for the respondent.

COCHRANE, J.:

The contract was executory and title to the property had not vested in the plaintiff. Although the contract uses the words " party of first part agrees to and by this contract does purchase of party of second part," that language does not necessarily import an executed contract but must be construed in connection with the rest of the contract taken as a whole and such construction placed thereon as is required by the entire instrument. (*Anderson* v. *Read,* 106 N. Y. 333, 344.)

In *Empire State Type Founding Company* v. *Grant* (114 N. Y. 40) it was said: " It is too well settled to require the citation of authority, that where a sale of personal property is made upon condition that the stipulated price shall be paid upon delivery, title does not pass until payment made, unless the vendor waive the condition."

In *Schryer* v. *Fenton* (15 App. Div. 158) it was stated by this court: " It is a familiar doctrine that where, on a sale of personal property, it is agreed that payment therefor shall accompany or precede delivery, the title does not pass until the payment is made."

We think it is entirely obvious from the contract in question that payment and delivery were intended to be concurrent acts. The underlying feature of the contract is that the defendant was to retain possession until paid. It is expressly provided that the sale by the plaintiff, to be public, was to be conducted in the store of the defendant, and the proceeds of each day's sale were to be received each day by the defendant until he had received the full amount of the purchase price due him. Clearly the plaintiff could not conduct the sales to the public elsewhere or remove the property from the store of the defendant for any purpose whatever until he had paid the defendant the full amount due him under his contract of sale. The defendant agreed to give his services without charge until he was fully paid. This provision was in part at least to enable him to have supervision of the property and of the sales thereof to the public and of the proceeds of such sales with a view to enabling him to more certainly secure and procure the amount due him. The contract contained a provision that the defendant would " give possession of store," but by this it was intended merely that the plaintiff should have the use thereof without charge because it had already been provided that the sale to the public was to be held " in the store of second party at 304 Broad St." The emphatic idea is contained in the word " give."

Where the intent of the parties does not clearly appear from the agreement it becomes a question of fact for the jury. (*Empire State Type Founding Company* v. *Grant*, 114 N. Y. 40, 44; *Bradley* v. *Wheeler*, 44 id. 495, 501.) But in the present case the intent that delivery and payment should be concurrent clearly appears from the instrument itself. For no other purpose was it provided that the plaintiff should resell the merchandise in the store of the defendant and that the latter should be at liberty to participate in such sale and should have the proceeds thereof from day to day. That feature of the contract unmistakably indicates that the

plaintiff could not have the delivery of the property until he paid for it.

The fact that the plaintiff was to resell the property to third parties is not inconsistent with the retention of title in the defendant. He was really making those sales under the direction of and for the defendant until the latter was paid. *Fennikoh* v. *Gunn* (59 App. Div. 132) is a case somewhat similar to this where the purchaser of a stock of groceries retailed the same to the public until his vendor received from the proceeds of the sale the amount of his contract price. The agreement in that case provided for a bill of sale when the purchase price was fully paid to the vendor. That provision, however, only expressed what in this case is clearly and just as unequivocally implied, that title should not pass until payment in full.

Nor did the plaintiff have such possession as enables him to maintain this action. From what has already been said it appears that there was no delivery of the property and no intention to deliver the same until the purchase price was paid the defendant. The property remained in his store subject to his control and direction except that it was the duty of the plaintiff to retail the same, but the defendant at all times had access to the property with a right to know what was being done with reference to the same and with a right to the proceeds of each day's sales. Delivery of a key is sometimes symbolic of delivery of possession provided it is so intended but not necessarily so. In the present case the plaintiff's representative had a key to the store but that meant no more than possession of a key by a clerk of a merchant. The rights of the parties rested in contract and the cause of action for conversion was not established.

The judgment should be affirmed, with costs.

All concurred, except KELLOGG, P. J., who dissented with opinion, in which WOODWARD, J., concurred.

KELLOGG, P. J. (dissenting):

It is immaterial who had the legal title to the goods. Each party had an interest in them as they were in the store, and

neither had a right to remove them without the consent of the other.

The defendant, having received the entire purchase price except $650, forcibly put the plaintiff out of the store and with force removed the goods therefrom to a place or places unknown to the plaintiff. The goods so removed inventoried $2,400. Clearly this was a wrongful taking from the plaintiff of property in which he was interested, and deprived him of his beneficial interest therein and made the defendant liable for conversion unless he could justify the removal. The decision of the case depends upon the facts to be found by the jury. I, therefore, favor reversal.

WOODWARD, J., concurred.

Judgment affirmed, with costs.